UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Charles Olando Simmons, # 15580-171, ) | C/A No. 4:10-1454-TLW-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Report and Recommendation |
| ) | |
| Sheriff Sam Parker; ) | |
| Administrator Richie Rawlings, ) | |
| ) | |
| Defendants. ) | |

The Plaintiff, Charles Orlando Simmons, filed this action on June 8, 2010, alleging claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] At all times relevant to the allegations in the Plaintiff's complaint, he was incarcerated at the Chesterfield County Detention Center ("CCDC") as a federal pre-trial inmate from March 13, 2008, to April 2, 2009. Plaintiff was subsequently returned to federal custody. Plaintiff brings this action alleging his constitutional rights were violated while housed at the CCDC. The Plaintiff is an inmate currently housed at Federal Correctional Institution in Edgefield, S.C. Before the undersigned is the Defendants' motion for summary judgment.

On April 7, 2011, Defendants filed a motion for summary judgment along with a memorandum and exhibits in support thereof. (Doc. #48). Because Plaintiff is proceeding pro se, he was advised on or about

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

1

April 8, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), of the procedure for summary judgment and the possible consequences if he failed to respond adequately. On May 3, 2011, Plaintiff filed a response in opposition. (Doc. #58).

## I.  DISCUSSION

### A.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.

Since the Plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, Plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

## B.  STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court  assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

4

## C.  ARGUMENT OF PARTIES/ANALYSIS

The Plaintiff alleges he slipped and fell due to water from a leaking roof in the area near his cell as a result of Defendants' negligence and indifference. Plaintiff alleges that he was on his way to the shower when he slipped. Plaintiff contends that after some investigation, he learned that one of the Officer's on duty had reported to the Administrator of the CCDC that the roof needed to be repaired but no action was taken to repair the damaged roof even though it had been reported and was an obvious risk.[2] (Complaint, p. 4, 6). As a result of his fall, Plaintiff alleges he received injuries to his lower back and neck to which the Defendants were deliberately indifferent.  Specifically, Plaintiff alleges with respect to his back injury that "[t]he Detention Center nursing Station refuse to give Plaintiff the proper medication for pain. This constitutes cruel and unusual punishment lack of medical treatment, negligence and recklessness behavior." (Complaint at 6). Plaintiff further asserts the medical nursing staff was negligent in failing to act on medical judgment in treating the Plaintiff in a timely manner by "not prescribing pain medication when needed." (Id. at 7).  Plaintiff also alleges he is still having problems with neck pain for which he has received no follow-up treatment. Therefore, Plaintiff argues Defendants were negligent in their "failure to observe, for protection of interest of another person, that degree of care, precaution and vigilance which circumstances justly demand. . ." Plaintiff requests actual, compensatory and punitive damages.

<u>1. EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and have moved for summary judgment on that basis as well as on the merits of the allegations.

---

[2] Other than his own statement, Plaintiff has not provided any evidence to support this allegation.

Defendants attached an affidavit from Ritchie Rollins who attests that he is employed by the Chesterfield County Sheriff as the Detention Center Director of the CCDC as is responsible for the day to day operation and administration of the CCDC. (Affidavit of Ritchie Rollins, doc. #48-3). The CCDC has a grievance system in place that allows inmates to file written requests and complaints regarding the facility and its operations, and to request medical treatment. (Id.). This procedure was available to all inmates at the CCDC during the time Plaintiff was housed there from March 13, 2008, to April 2, 2009. Plaintiff filed numerous requests and complaints while housed at the CCDC but no requests or complaints referencing a leak in the roof of any area of the Detention Center nor any requests or complaints regarding medical treatment. (Id.). Rollings also attests that an independent contract company provides the medical services to the CCDC and employs qualified and licensed medical professions to provide medical care and make medical decisions about the appropriate medical care for inmates. (Id.). Further, Rollings attests that he reviewed and attached Plaintiff's medical records relevant to the time period referenced in his complaint to his affidavit. Rollins attests that the medical records demonstrate that Plaintiff was treated at Chesterfield General Hospital on February 27, 2009, the date of the alleged incident.(Id.). The treatment at Chesterfield General Hospital consisted of CT scans and x-rays, all of which were negative for any acute traumatic injury as a result of the Plaintiff's fall. (Id.). Rollins further attests that he is familiar with the area of the CCDC in which Plaintiff was housed at the time of his fall on February 27, 2009 (E pod) and there was not a leak in the roof at the CCDC in that area. (Id.).

With respect to the exhaustion issue, in his response in opposition, Plaintiff asserts Defendants' allegation that he did not exhaust his administrative remedies should be denied as "Moot" as it is inconsistent with case law. Plaintiff did not submit copies of any grievances that he submitted with relation to the claims in this case.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though Plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Based on the evidence presented, it is recommended that Defendants' motion for summary judgment (doc. #48) be granted for failure to exhaust administrative remedies. In the alternative, the claim will be addressed briefly on the merits.

2. MEDICAL INDIFFERENCE

Plaintiff has alleged medical negligence/indifference asserting the medical nursing staff denied him proper medical treatment after he slipped and fell injuring his neck and back. Specifically, Plaintiff alleges that he was not prescribed pain medication when needed and not treated in a timely manner. Defendants assert Plaintiff received medical treatment which did not violate his constitutional rights.

"The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir.1990) (citing Martin v. Gentile, 849 F.2d 863, 871 (4th Cir.1988)). In order to state a claim, "[a] plaintiff must satisfy two elements ...: he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." Sires v. Berman, 834 F.2d 9, 12 (1st Cir.1987). In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the Defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability

9

for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

First, any allegations of medical indifference as to Defendants Sheriff Parker and Administrator Rollings should be dismissed as they are not medical personnel and Plaintiff has not shown that they interfered with Plaintiff's medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were

personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. Under these principles, the Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants who are non-medical personnel.

Furthermore, the Plaintiff has failed to show that he was denied medical treatment for any injury he may have suffered after his fall. Defendants submitted the affidavit of Chris Ralph, Sergeant/Shift Supervisor at the CCDC who attests that on the date of the incident involving Plaintiff, he was monitoring via video various areas of the CCDC, including E Pod where Plaintiff was located. (Ralph affidavit, doc. #48-6). After observing Plaintiff slip and fall on the video monitor, he called the CCDC nurse and 911. (Id.). Emergency medical personnel arrived within ten to fifteen minutes and transported Plaintiff to Chesterfield general hospital in an ambulance, accompanied by an officer in the ambulance, and a second officer following in a vehicle. (Id.). Based on Plaintiff's medical records, he was treated at Chesterfield General Hospital and released back to the CCDC. The Hospital notes reveal Plaintiff received normal x-rays and a CT Scan all of which showed no injury due to the fall. The notes indicate that Plaintiff was alert and oriented, denied musculoskeletal pain, numbness or tingling, had no swelling or deformity and had full range of motion in his extremities. He was released and with a pain level of 0 on a 1-10 scale , was told to "[e]xpect soreness and muscle stiffness, use Motrin/Tylenol as needed for pain. Return to ED as needed for emergencies." (Entry 48-5, page 16).

In his complaint, Plaintiff admits that the paramedics were called, he was taken to Chesterfield General Hospital by ambulance, and received x-rays. (Compliant). Plaintiff further admits that the nurse at CCDC gave him Ibuprofen but argues she did not give him pain medication.

As held in Estelle, 429 U.S. at 107, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Even if Plaintiff's allegations are true, he has shown nothing more than a disagreement with the medical treatment provided, not that he was completely denied medical treatment. Also, Plaintiff has not put forth any allegation or evidence that he received anything other that de minimis injury. Additionally, Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored. Plaintiff has not shown that any conduct by these Defendants "shocks the conscious" as required by Miltier v. Beorn, supra. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice" Jackson v. Fair, supra. The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, supra. Any disagreement between an inmate and medical personnel generally fails to state a claim. Although there is nothing to indicate that there were mistakes of medical judgment, even if shown, mistakes of medical judgement are not subject to judicial review in a § 1983 action. Russell v.Sheffer, supra.

Based on the evidence presented, there has been no deliberate indifference shown to the overall medical needs of the Plaintiff by these Defendants. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

3. CONDITION OF CONFINEMENT

Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535,

99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir.1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. Id. (citing Bell, 441 U.S. at 53). " '[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.' " Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir.1991) (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991))

In this case, the Plaintiff has failed to show that the Defendants were deliberately indifferent to the conditions he alleges, a leak in the roof. See Farmer v. Brennan, 511 U.S. at 847 (a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk). The Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir.1995). Our courts have routinely held that slip and fall cases do not implicate the Constitution. Instead, they state mere state law tort claims at best.

Similarly, the Plaintiff's claim under the facts alleged in the instant case fails both the objective and subjective prongs of the analysis. A slippery floor does not constitute a denial of life's necessities to meet the first objective prong of a conditions of confinement claim. "It is certain that not all violations of duties

13

of care arising out of tort law become constitutional violations merely because the victim is a state prisoner and the defendant is a state official." Mitchell v. State of W. Va., 554 F.Supp. 1215, 1216 (D.W.Va.1983). Here, the evidence does not show that the Defendants knew of the allegation that the roof leaked and caused a slippery floor in the area Plaintiff was housed. Chris Ralph, a corrections officer at the CCDC, attests that he does not recall any liquid being on the floor in the area in which Plaintiff fell. (Ralph's affidavit, doc. #48-6). Sheriff Sam Parker attests that he is the Sheriff for Chesterfield County and that he was not aware of a leak in the roof of the CCDC during the period of time referenced in Plaintiff's complaint but would "defer to the Detention Center Director on that issue." (Id.). Even assuming Defendants knew that the roof was leaking, there is no evidence that Defendants knew of a slippery floor resulting from the leaking roof or that they were deliberately indifferent to same. Accordingly, Plaintiff has failed to show a serious deprivation of a basic human need and that the Defendants were deliberately indifferent to a serious risk of harm to the Plaintiff. As negligence is not a constitutional violation, Plaintiff's allegation that he was injured in a fall at the CCDC fails to state a cognizable claim under § 1983.

4. STATE LAW CLAIMS

To the extent that the Plaintiff's complaint can be perceived to allege claims under state law, the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the Plaintiff's federal claims as set for above. See 28 U.S.C. § 1367(c).

### D. QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity. Although the burden of showing immunity remains on the Defendant, an early determination is desirable, since immunity provides complete protection

from a lawsuit, including from extensive discovery or other preparation. When a Defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue.

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the Defendant and the burden of proving entitlement to immunity rests with the Defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the Defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly

15

> established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995).

As discussed above, the Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Thus, the undersigned recommends that summary judgment be granted as to these Defendants.

## II.  CONCLUSION

The Plaintiff has failed to show that the Defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendants (document #48) for summary judgment be GRANTED IN ITS ENTIRETY and the case dismissed.

                          Respectfully submitted,

                          s/Thomas E. Rogers, III
                          Thomas E. Rogers, III
                          United States Magistrate Judge

August 29, 2011
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**